1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
2                        JACKSONVILLE DIVISION

3  UNITED STATES OF AMERICA,        Case No. 3:21-cr-22(S4)-MMH-MCR

4          Plaintiff,               April 21, 2023

5  v.                              10:31 a.m. - 12:15 p.m.

6  KRISTOPHER JUSTINBOYER ERVIN     Courtroom 10B
   and MATTHEW RAYMOND HOOVER,
7
           Defendants.
8  _____

9
                          **JURY TRIAL**
10                       **(VOLUME 9 of 9)**

11
           BEFORE THE HONORABLE MARCIA MORALES HOWARD
12                   UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19 OFFICIAL COURT REPORTER:

20         Katharine M. Healey, RMR, CRR, FPR-C
           PO Box 56814
21         Jacksonville, FL 32241
           Telephone: (904) 301-6843
22         KatharineHealey@bellsouth.net

23

24                         (Proceedings reported by stenography;
                           transcript produced by computer.)
25

1           A P P E A R A N C E S

2

3   COUNSEL FOR THE GOVERNMENT:

4       **LAURA C. TAYLOR, ESQUIRE**
        **DAVID MESROBIAN, ESQUIRE**
5       United States Attorney's Office
        300 North Hogan Street, Suite 700
6       Jacksonville, FL 32202

7

8   COUNSEL FOR DEFENDANT ERVIN:

9       **ALEX KING, ESQUIRE**
        Monroe & King, P.A.
10      1805 Copeland Street
        Jacksonville, FL 32204
11

12
    COUNSEL FOR DEFENDANT HOOVER:
13
        **ZACHARY Z. ZERMAY, ESQUIRE**
14      Zermay Law
        1762 Windward Way
15      Sanibel, FL 33957

16  - A N D -

17      **MATTHEW LAROSIERE, ESQUIRE**
        6964 Houlton Circle
18      Lake Worth, FL 33467

19

20

21

22

23

24

25

1                          I N D E X

2                                                    PAGE

3   JURY VERDICT ANNOUNCED..................................... 5

4   JURY POLLED.............................................. 10

5   DEFENDANTS' *ORE TENUS* MOTIONS FOR
         JUDGMENT OF ACQUITTAL DENIED......................... 20
6
    GOVERNMENT'S REQUEST FOR REMAND
7        OF DEFENDANT HOOVER.................. 16, 17, 24, 28, 30

8   DEFENDANT HOOVER'S ARGUMENTS
         AGAINST REMAND...................... 16, 21, 25, 29, 31
9
    COURT GRANTS GOVERNMENT'S REQUEST FOR
10       REMAND OF DEFENDANT HOOVER........................... 32

11

12

13

14

15                        E X H I B I T S

16  ADMITTED                                           PAGE

17    COURT'S EXHIBIT 4....................................... 4

18    GOVERNMENT'S EXHIBIT 1................................. 26

19    GOVERNMENT'S COMPOSITE EXHIBIT 2...................... 31

20

21

22

23

24

25

1                       P R O C E E D I N G S

2     April 21, 2023                                  10:31 a.m.

3                             -   -   -

4          (All parties present.  Jury not present.)

5               COURT SECURITY OFFICER:  All rise.  The Honorable

6     Court is back in session.

7               Please be seated.

8               THE COURT:  All right.  We're back here on

9     Case No. 3:21-cr-22(S4)-MMH-MCR, United States of America vs.

10    Kristopher Justinboyer Ervin and Matthew Raymond Hoover.

11              Counsel for the government along with the case agent

12    are present.

13              Counsel for the defendants are all present, as are

14    Mr. Ervin and Mr. Hoover.

15              I'm told the jury has verdicts.

16              Just for purposes of the record, we did receive one

17    note this morning at about 9:05.  I didn't call you in for it

18    because the note simply read, "Can we have a clean verdict

19    sheet for Hoover?  Also more juror stickers please?"

20              So we gave them a clean verdict form and more juror

21    stickers because they apparently ran out of juror stickers.

22              So Madam Deputy, that will be Court's --

23              COURTROOM DEPUTY:  4, Your Honor.

24              THE COURT:  -- 4.  All right.

25         (Court's Exhibit 4 admitted.)

```
 1              THE COURT:  Let's have the jury, please.
 2              COURT SECURITY OFFICER:  All rise for the jury.
 3         (Jury enters, 10:31 a.m.)
 4              COURT SECURITY OFFICER:  Please be seated.
 5              THE COURT:  All right.  Who speaks for the jury?
 6              JUROR:  (Raises hand.)
 7              THE COURT:  Has the jury reached verdicts as to each
 8    defendant?
 9              JUROR:  Yes, ma'am, we have.
10              THE COURT:  Can you hand the verdict forms to the
11    court security officer, please.
12              JUROR:  (Complies.)
13              THE COURT:  I will now publish the jury's verdicts.
14              United States District Court, Middle District of
15    Florida, Jacksonville Division.
16              United States of America vs. Kristopher Justinboyer
17    Ervin.  Case No. 3:21-cr-22(S4)-MMH-MCR.
18              Verdict.
19              Question 1, With regard to Count One of the
20    indictment, which charges the defendant with conspiracy to
21    transfer unregistered machine gun conversion devices, we, the
22    Jury, find Kristopher Justinboyer Ervin guilty.
23              With regard to Count Two of the indictment, which
24    charges the defendant with transferring unregistered machine
25    gun conversion devices to a person with the initials D.S., we,
```

1    the Jury, find the defendant, Kristopher Justinboyer Ervin,

2    guilty.

3              With regard to Count Three of the indictment, which

4    charges the defendant with transferring unregistered machine

5    gun conversion devices to a person with the initials J.M., we,

6    the Jury, find Kristopher Justinboyer Ervin guilty.

7              With regard to Count Four of the indictment, which

8    charges the defendant with transferring unregistered machine

9    gun conversion devices to a person with the initials R.D., we,

10   the Jury, find Kristopher Justinboyer Ervin guilty.

11             With regard to Count Five of the indictment, which

12   charges the defendant with transferring unregistered machine

13   gun conversion devices to a person with the initials S.D., we,

14   the Jury, find Kristopher Justinboyer Ervin guilty.

15             With regard to Count Six of the indictment, which

16   charges the defendant with transferring unregistered machine

17   gun conversion devices to a person with the initials J.A., we,

18   the Jury, find Kristopher Justinboyer Ervin guilty.

19             With regard to Count Seven of the indictment, which

20   charges the defendant with transferring unregistered machine

21   gun conversion devices to a person with the initials R.W., we,

22   the Jury, find Kristopher Justinboyer Ervin guilty.

23             With regard to Count Eight of the indictment, which

24   charges the defendant with transferring unregistered machine

25   gun conversion devices to a person with the initials A.O., we,

1  the Jury, find Kristopher Justinboyer Ervin guilty.

2          With regard to Count Nine of the indictment, which

3  charges the defendant with structuring, and attempting to

4  structure, currency transactions for the purpose of evading

5  currency transaction reporting requirements, we, the Jury, find

6  the defendant guilty.

7          With regard to Count Ten of the indictment, which

8  charges the defendant with possessing unregistered machine gun

9  conversion devices on or about February 22nd, 2021, we, the

10  Jury, find Kristopher Justinboyer Ervin guilty.

11          With regard to Count Eleven of the indictment, which

12  charges the defendant with possessing unregistered machine gun

13  conversion devices on or about February 24, 2021, we, the Jury,

14  find Kristopher Justinboyer Ervin guilty.

15          With regard to Count Twelve of the indictment, which

16  charges the defendant with possessing unregistered machine gun

17  conversion devices on or about March 2nd, 2021, we, the Jury,

18  find Kristopher Justinboyer Ervin guilty.

19          It's signed this 21st day of April, 2023.

20          And Juror No. 3, is this -- is this your signature?

21          JUROR:  Yes, ma'am, it is.

22          THE COURT:  United States District Court, Middle

23  District of Florida, Jacksonville Division, United States of

24  America vs. Matthew Raymond Hoover, Case No.

25  3:21-cr-22(S4)-MMH-MCR.

1    With regard to Count -- Question 1, sorry, With

2  regard to Count One of the indictment, which charges the

3  defendant with conspiracy to transfer unregistered machine gun

4  conversion devices, we, the Jury, find Matthew Raymond Hoover

5  guilty.

6    With regard to Count Two of the indictment, which

7  charges the defendant with transferring unregistered machine

8  gun conversion devices to a person with the initials D.S., we,

9  the Jury, find Matthew Raymond Hoover, guilty.

10    Question 3, With regard to Count Three of the

11  indictment, which charges the defendant with transferring

12  unregistered machine gun conversion devices to a person with

13  the initials J.M., we, the Jury, find Matthew Raymond Hoover

14  guilty.

15    Question 4, With regard to Count Four of the

16  indictment, which charges the defendant with transferring

17  unregistered machine gun conversion devices to a person with

18  the initials R.D., we, the Jury, find Matthew Raymond Hoover

19  not guilty.

20    With regard to Count Five of the indictment, which

21  charges the defendant with transferring unregistered machine

22  gun conversion devices to a person with the initials S.D., we,

23  the Jury, find Matthew Raymond Hoover guilty.

24    Question 6, With regard to Count Six of the

25  indictment, which charges the defendant with transferring

1 unregistered machine gun conversion devices to a person with

2 the initials J.A., we, the Jury, find Matthew Raymond Hoover

3 not guilty.

4        Question 7, with regard to Count Seven of the

5 indictment, which charges the defendant with transferring

6 unregistered machine gun conversion devices to a person with

7 the initials R.W., we, the Jury, find Matthew Raymond Hoover

8 guilty.

9        With regard to Count Eight of the indictment, which

10 charges the defendant with transferring unregistered machine

11 gun conversion devices to a person with the initials A.O., we,

12 the Jury, find Matthew Raymond Hoover not guilty.

13        And it's also signed this 21st day of April, 2023.

14        And Juror No. 3, is this your signature?

15        JUROR:  Yes, ma'am, it is.

16        THE COURT:  Let me ask counsel to come to sidebar to

17 inspect the verdicts.

18     (Proceedings at sidebar:)

19        THE COURT:  Mr. King and Mr. Larosiere, I've handed

20 you the verdicts.  I'll ask you to identify any irregularities

21 or inconsistencies in the verdicts that need to be addressed

22 before we dismiss the jury.

23        MR. KING:  None on behalf of Mr. Ervin.

24        MR. LAROSIERE:  None on behalf of Mr. Hoover.

25        THE COURT:  Ms. Taylor?

1          MS. TAYLOR:  None on behalf of the government.

2          THE COURT:  All right.  Then I'm going to poll the

3    jury.  And once I poll them, is there anything else I need to

4    do before I excuse them, Mr. King?

5          MR. KING:  No, Your Honor.

6          THE COURT:  Mr. Larosiere?

7          MR. LAROSIERE:  No, Your Honor.

8          THE COURT:  Ms. Taylor?

9          MS. TAYLOR:  No, Your Honor.

10         THE COURT:  All right.

11       (Proceedings in open court:)

12         THE COURT:  Ladies and gentlemen, you've just heard

13   me read the verdict forms aloud.  What I'm going to do is

14   something that we call "polling" the jury, and that's just a

15   legal way of saying that I'm going to go down the line and I'm

16   going to ask each of you to tell me whether the verdict I read

17   aloud is the verdict that each of you individually reached.

18         So Juror No. 1, is this your verdict?

19         JUROR:  Yes, ma'am.

20         THE COURT:  Juror No. 2, is this your verdict?

21         JUROR:  Yes, ma'am.

22         THE COURT:  Juror No. 3, is this your verdict?

23         JUROR:  Yes, ma'am.

24         THE COURT:  Juror No. 4, is this your verdict?

25         JUROR:  Yes, ma'am.

1          THE COURT:  Juror No. 5, is this your verdict?

2          JUROR:  Yes, ma'am.

3          THE COURT:  Juror No. 6, is this your verdict?

4          JUROR:  Yes, ma'am.

5          THE COURT:  Juror No. 7, is this your verdict?

6          JUROR:  Yes, ma'am.

7          THE COURT:  Juror No. 9, is this your verdict?

8          JUROR:  Yes, ma'am.

9          THE COURT:  Juror No. 10, is this your verdict?

10          JUROR:  Yes, ma'am.

11          THE COURT:  Juror No. 13, is this your verdict?

12          JUROR:  Yes, ma'am.

13          THE COURT:  Juror No. 14, is this your verdict?

14          JUROR:  Yes, ma'am.

15          THE COURT:  Juror No. 15, is this your verdict?

16          JUROR:  Yes, ma'am.

17          THE COURT:  Madam Deputy, I will submit the verdict

18  forms to you and ask you to place them on the docket.

19          COURTROOM DEPUTY:  Yes, Your Honor.

20          THE COURT:  All right.  Ladies and gentlemen, that

21  completes your jury service.  One thing that I want to let

22  you -- well, a couple things I need to let you know.

23          You need to stop by and see the jury administrator on

24  your way out.  You've also completed your federal jury service,

25  so you won't be called for at least two more years.  Now, you

1   may be called by my colleagues next door at the state

2   courthouse, but you've finished your federal jury service, and

3   we are in your debt.  Without individuals like you, who are

4   willing to put aside all of your personal responsibilities and

5   the other things that you were planning to do for these two

6   weeks, we are not able to do what the United States

7   Constitution requires, and that is, provide a fair and

8   impartial jury to resolve criminal charges.  So for that, the

9   lawyers and the parties and the citizens of the Middle District

10  of Florida are in your debt because you've provided a very,

11  very important public service.

12          In just a moment I'm going to let you go back to the

13  jury room.  If you -- I need about five minutes with the

14  attorneys.  If you're willing to wait a few minutes, I'd like

15  to come back and thank you personally, which I like to do.  Of

16  course, if you want to get on your way, you won't hurt my

17  feelings.  I'll understand.  But I would like to say thank you

18  personally to those of you who have a few minutes to wait.

19          One last thing I want to say before you go is that if

20  you'll recall when I gave you the Court's final instructions,

21  one of the last instructions told you that your deliberations

22  are secret.  And that's true.  No one is permitted to ask you

23  about your deliberations.

24          But this is the United States of America, and

25  everyone has freedom of speech.  So I can't order you not to

1   talk about your deliberations.  I will tell you, however, that

2   out of respect for your fellow jurors, I would strongly urge

3   you not to talk about the discussions you had during your

4   deliberations.

5          Feel free to talk to people about the case, about

6   what you learned, about the facts, all those things, but I

7   would suggest to you that only you 12 people sat through the

8   entire trial, only you agreed to be fair and impartial, and

9   only you went back there to deliberate on your verdict.  And

10  out of fairness to one another, I would suggest that that part

11  of your discussions should just stay between the 12 of you.

12         So that's my unsolicited advice.  It's the same

13  advice I give every jury, and so I'll urge you to consider

14  that.

15         Counsel, anything further that I need to do with

16  regard to the jury?

17         MS. TAYLOR:  No, Your Honor.

18         MR. KING:  No, Your Honor.

19         MR. LAROSIERE:  No, Your Honor.

20         THE COURT:  All right.  Ladies and gentlemen, with

21  our thanks, you're free to go.  And as I said, I'll be back in

22  just a few minutes if you can wait.

23         COURT SECURITY OFFICER:  All rise for the jury.

24         THE COURT:  And I do have a gift for you-all as well.

25     (Jury exits, 10:44 a.m.)

1            THE COURT:  Just so there's no confusion on the

2      record, the gift is a Challenge coin with the seal of the

3      Middle District of Florida and the State of Florida.  That's --

4      we give them to jurors to thank them for their service at the

5      completion of trials.  So I didn't want there to be any

6      confusion about what that was.

7            All right.  At this time I have to ask Mr. Hoover and

8      Mr. Ervin to stand so that I can adjudicate them based upon the

9      jury's verdict.

10           All right.  I'm going to start with Mr. Ervin.

11      Kristopher Justinboyer Ervin, based on the jury verdict in

12      Case No. 3:21-cr-22(S4)-MMH-MCR finding you guilty of the

13      charges in Counts One through Twelve of the superseding

14      indictment, the Court hereby adjudicates you guilty of that

15      offense.

16           You will remain in the custody of the marshal pending

17      sentencing.  Ms. Wiles just handed me a sentencing date.

18      Sentencing will be on July 31st at 9:30 in the morning.

19           In advance of that the probation office will meet

20      with you.  They'll need to talk to you to prepare a presentence

21      report.  If you have any questions about that, Mr. King will

22      answer your questions.  When the presentence report is

23      completed, Mr. King will get a copy of it to you, review it.

24      If you disagree with it in any way, bring it to Mr. King's

25      attention.  He will address it.  And if he's unsuccessful in

1    doing so, then I will resolve it at the sentencing hearing.

2         Do you understand those things, sir?

3         DEFENDANT ERVIN:  Yes, ma'am.

4         THE COURT:  Matthew Raymond Hoover, based upon the

5    jury's verdict in Case No. 3:21-cr-22(S4)-MMH-MCR finding you

6    guilty of the offenses charged in Counts One through Eight of

7    the indictment, the Court hereby adjudicates you --

8         (The courtroom deputy confers with the judge.)

9         THE COURT:  Oh, I'm sorry, you're right.

10        I need the verdict form back.  Thank you, Ms. Wiles.

11        -- finding you guilty of Counts One, Two, Three,

12   Five, and Seven, the Court hereby adjudicates you guilty of the

13   charges in Counts One, Two, Three, Five, and Seven of the

14   fourth superseding indictment.  Ms. Taylor -- well, and

15   adjudicates you not guilty of the charges in Counts Four, Six,

16   and Eight.

17        As I explained to Mr. Ervin, the probation office

18   will prepare a presentence report.  You'll need to talk to them

19   about that.  When they complete the presentence report they'll

20   get it to your attorneys.  Your attorneys will get it to you to

21   review.  If you disagree with anything in the presentence

22   report, bring it up with your attorneys.  They will try to

23   resolve it.  If they're unable to do so, then I will resolve it

24   at the sentencing hearing.

25        Do you understand those things, sir?

```
 1              DEFENDANT HOOVER:  (Nods head.)
 2              THE COURT:  I need you to say --
 3              DEFENDANT HOOVER:  Yes.
 4              THE COURT:  Okay.
 5              Ms. Taylor, Mr. Hoover is currently on bond.  What is
 6     the government's position as to that matter?
 7              MS. TAYLOR:  Your Honor, the United States moves for
 8     remand of Mr. Hoover under Section 3143(a)(1).
 9              THE COURT:  Is it a mandatory remand, Ms. Taylor?
10              MS. TAYLOR:  I don't believe so, Your Honor.  I was
11     looking through that before, and I don't think that any of the
12     mandatory remand conditions apply to him, which is why it would
13     fall under (a)(1).  And so it would be his burden to show by
14     clear and convincing evidence that Mr. Hoover is not likely to
15     flee or pose a danger to the safety of any other person or the
16     community if released.
17              THE COURT:  Mr. Zermay or Mr. Larosiere, are you
18     prepared to address the matter of bond at this time -- or
19     remand I guess is the better question?
20              Mr. King and Mr. Ervin, you may take your seats.
21              Mr. Hoover, you may take your seat as well.
22              MR. ZERMAY:  Yes, Your Honor.  We respectfully
23     request that he not be remanded into custody.  He's not a
24     flight risk.  He owns a home.  He has children in the
25     community.  He's -- and I have a Pretrial Release Provision
```

1   Status Report that was prepared by Mr. Daniel Dumpit, who has

2   stated that he submitted previously to four urinalysis tests,

3   each with negative results.  And Officer Herman, who I believe

4   is also with Pretrial Services, has stated that Mr. Hoover has

5   complied with the terms and conditions of release.  And based

6   upon defendant's compliance with the terms and conditions of

7   release, his supervision is satisfactory, and therefore we'd

8   state there's a -- by clear and convincing evidence that he is

9   not a flight risk and not a danger to the community.

10          THE COURT:  Ms. Taylor, given Mr. Hoover's behavior

11   on bond for at least a year and a half, closer to two years,

12   why wouldn't it be appropriate to continue him on bond at this

13   time?

14          MS. TAYLOR:  Your Honor, looking at the factors that

15   the Court is to consider, obviously the weight of the evidence

16   was extremely strong because the jury has convicted Mr. Hoover

17   of most counts, including the conspiracy count, which

18   encompasses all of the transfers of what are thousands of

19   dangerous and unusual firearms: machine gun conversion devices.

20   It's an extremely serious offense.

21          Additionally, Your Honor, obviously Mr. -- Mr. Hoover

22   has, for the most part, shown up when he is supposed to, but

23   his circumstances have changed now.  He has posted on social

24   media throughout this trial that -- his expectation that he

25   would be acquitted.  And obviously things did not go according

1    to how he expected them to and he has now been convicted.  And

2    so his motivations to continue to show up and comply with these

3    proceedings, given that he is now very likely to be going to

4    prison, have obviously shifted.

5            Additionally, Your Honor, I do have concerns about

6    the safety of all of the witnesses in this case as well as

7    personnel from the U.S. Attorney's Office based upon what I

8    have seen in terms of Mr. Hoover's previous videos.  For

9    example, when he -- after Mr. Ervin was arrested, Mr. Hoover

10   posted a video in which he included the name and phone number

11   of Ms. Call -- or at least the phone number -- and encouraged

12   his viewers to call the Public Defender's Office and

13   essentially harass the Public Defender's Office.

14           And on numerous other occasions he has made videos

15   about this case which have resulted in comments -- many

16   comments to the effect of "this prosecutor doesn't deserve to

17   breathe anymore," also comments about the judge not deserving

18   to continue to live.

19           And given that he has in the past fomented these

20   sorts of comments against myself and this Court, and now he has

21   throughout the trial also started posting on his social media

22   that -- for example, that he -- he's stating that the testing

23   of the firearm was faked, misrepresenting what has happened in

24   this trial to make it appear that he did not receive a fair

25   trial, although he also at the same time was saying that he

1    expected to be acquitted, I think there are serious concerns

2    for the safety of the witnesses; again, concerns for the

3    personal safety of everyone who has been involved in this

4    prosecution.

5            Mr. Hoover has not, to my knowledge, called me out by

6    name in his videos yet, but whether that would continue, given

7    the phase that we are at now, I do not know.

8            THE COURT:  Mr. Zermay, those matters are concerning.

9            Here's what I'm going to do.  I need to go let the

10   jury go.  I'm going to give you-all -- it's about five minutes

11   to 11.  We'll reconvene here at about 11:20.

12           If you disagree with any of the representations

13   Ms. Taylor has made, you'll need to explain that to me.  And if

14   there's disagreement about the content of those videos,

15   Ms. Taylor may need to show them to me.

16           But I do think it is true that having now been

17   convicted of five serious offenses, Mr. Hoover finds himself in

18   a very different place than he was before, and I question

19   whether continuation of bond is appropriate.

20           But I'm going to give you some time to confer with

21   counsel and to be prepared to address the matters that

22   Ms. Taylor just raised.

23           It is Mr. Hoover's burden to convince the Court by

24   clear and convincing evidence that he's not likely to flee or

25   pose a danger to the safety of any other person or the

1    community.  So the presumption is detention once there's a

2    conviction, and the burden is on Mr. Hoover.

3              So I'll give you an opportunity to prepare to address

4    that.  And we'll come back at about 11 -- about 11:25.  So I'll

5    give you about 25 minutes.

6              Mr. Hoover, please don't leave the courthouse.

7              And Mr. Ervin is -- we've completed the matters as to

8    Mr. Ervin, so Mr. King and Mr. Ervin are excused.  You don't

9    have to be present for the remaining discussion about whether

10   or not Mr. Hoover will be remanded.

11             MR. KING:  Your Honor, just very briefly.  I know the

12   Court reserved ruling on our Rule 29 motions.  Is it the

13   Court's intention to continue to reserve until we file our post

14   verdict, or to --

15             THE COURT:  Actually, thank you for reminding me.  I

16   had a note to put on the record that both defendants made

17   motions for judgment of acquittal under Rule 29 at the close of

18   the government's case.

19             Although I was inclined to deny the motions, I opted

20   to take them under advisement.  But at this time, having been

21   convinced that the government did present sufficient evidence

22   as to each charge and each defendant to submit each charge to

23   the jury for its consideration, I deny the Rule 29 motions.

24   The denial, of course, is without prejudice to renewal of any

25   and all arguments raised in the Rule 29 motions in your

1  post-trial motions.

2          MR. KING:  Thank you, Your Honor.

3          THE COURT:  Thank you, Mr. King.

4          All right.  We'll be back in 25 minutes.

5          COURT SECURITY OFFICER:  All rise.

6      (Recess, 11 a.m. to 11:25 a.m.)

7      (Mr. King and Defendant Ervin not present.)

8          COURT SECURITY OFFICER:  All rise.  This Honorable

9  Court is back in session.

10          Please be seated.

11          THE COURT:  Mr. Zermay.

12          MR. ZERMAY:  Yes, Your Honor.  May it please the

13  Court.

14          Respectfully, the concerns that Ms. Taylor raised

15  regarding statements are statements of third parties that are

16  unrelated to the case and the followers that would be

17  commenting online.  Mr. Hoover has expressed to me that he'll

18  commit to not posting about the trial at all on social media.

19          And, really, his factors that led to the pretrial

20  release haven't changed.  He has no criminal history.  He has a

21  highly established presence in his community.  He owns

22  property.

23          The record's replete with Mr. Hoover's desire to

24  follow the law.  When he was arrested he was very cordial to

25  the marshals.  And he has no post-arrest bad behavior, as his

1   Pretrial Supervision Report states, that he had no evidence of

2   drug use in his urinalysis test.  And the pretrial services

3   stated that he complied with all conditions in terms of

4   probation -- or of pretrial release.  He has no arrests or

5   warrants out while on pretrial release.

6          And with respect to his expectations at trial, we

7   were prepared to go to a bench trial earlier, in part to

8   accelerate the appellate process, which tends to show that he

9   was prepared for this to go on appeal to the Eleventh Circuit.

10  And that was the case since we filed the motion to dismiss and

11  engaged in discussion with the government to facilitate a bench

12  trial.

13         While he was on pretrial release he listened to the

14  pretrial services about the content of what he was posting.  He

15  was discussing President Joe Biden in one of his videos, and

16  the pretrial service officer expressed that it was the pretrial

17  officer's opinion that that was approaching the line, and then

18  he scaled back what he was discussing.  So he does have respect

19  for authority and rules during the course of the supervisory

20  process.

21         And he has also complied with not having firearms for

22  almost two years now.

23         And regarding comments during the trial, Your Honor,

24  on the screen is an example of what Mr. Hoover posted.  He's

25  expressing to his followers requests that they follow basic

1   courtroom decorum.  For example --

2           THE COURT:  I need a -- do you have a paper copy of

3   this?  There's nothing -- that's not in the record, and,

4   frankly, I can't read it.

5           MR. ZERMAY:  I don't have a paper copy of it with me

6   at the moment, Your Honor, but it's available at Mr. Hoover's

7   YouTube channel under the Community tab.  And if Your Honor

8   would like, I could read it into the record.

9           THE COURT:  Okay.  I mean, we need it in the record

10  somehow, but go ahead.

11          MR. ZERMAY:  And I quote, "So I was told I have

12  viewers that have been at my trial every day.  However, because

13  not even the U.S. Marshals wear a uniform and people come in

14  and out all day long, I cannot tell who is who.  I have an

15  [verbatim] approached anyone unless they made it clear they

16  were here to see me.  So, if you come there, make sure I know

17  you're there to see me and I have no problems talking to you or

18  shaking your hand or even getting lunch.  I actually enjoy

19  meeting people that watch my channel, so it's not a problem or

20  inconvenient at all.  Just let me know who you are.

21          "Just a quick rule recap in case you come:  One,

22  nobody has had a problem with this yet, but just for preventive

23  maintenance, I guess you should call it" -- all capital

24  letters -- "do not, under any circumstance, talk with any

25  member of the jury or members of the prosecution.  The absolute

1   last thing I need is some sort of mistrial or having to do this

2   whole thing over again.  The financial burden is intense.  And

3   while I'm at trial, my kids are stuck in a hotel and my oldest

4   is out of school.  Two, wear nice clothes as if it was your

5   court date.  And three, make sure to remain quiet while court

6   is in session.  Four, the trial is incredibly dry, so if you

7   want to have a quick meet-up and greet," it discusses that he

8   could say hello during the lunch hour.

9           And this is the type of comments that the government

10   was generally complaining about earlier.

11           THE COURT:  All right.

12           Ms. Taylor.

13           MS. TAYLOR:  Your Honor, I was not complaining about

14   this particular comment, but, for example, I have -- I do have

15   screenshots of comments posted on one of Mr. Hoover's videos

16   that was from March of this year where he was complaining about

17   the amount of discovery in this case.  And one of the replies

18   to that video was, "This is absolutely malicious prosecution at

19   this point.  That prosecutor should never be allowed to

20   practice again."

21           And then a reply that read, "Let alone exist."

22           And then after some further replies, "Same goes for

23   the judge."

24           And then, "What you call malicious prosecution, they

25   call a job well done.  The only thing missing from this

1   equation is Matt having a public defender."

2          And then, "Most prosecutors are guilty of this level

3   of evil," period.

4          And then, "That lawyer should never be allowed to

5   breathe again."

6          There's more along these lines, Your Honor.  And this

7   was just one video that I observed where Mr. Hoover was

8   fomenting distrust of the judicial system and clearly fomenting

9   these feelings and comments among multiple of his followers.

10  And this is only from a month ago, while he was on pretrial

11  release.

12         And I have those two screenshots that I can tender to

13  the courtroom deputy, Your Honor.

14         MR. ZERMAY:  And, Your Honor --

15         THE COURT:  Go ahead.  I'm sorry.

16         MR. ZERMAY:  Yes, if I may be briefly heard on that.

17         Those are not Mr. Hoover's comments, they're random

18  people on the internet that are making those comments.  To

19  attribute them to Mr. Hoover would be unfair.

20         THE COURT:  Is the video that prompted those

21  responses, is that still -- is that still up?

22         MS. TAYLOR:  It is, Your Honor.  It's -- if -- if

23  Mr. Zermay would be so kind as to go to the Videos tab up here,

24  it's the one called "I think I Don't Have a Trial Anymore,"

25  something like that.  Or "I don't Have a Trial Anymore," I

1    think.

2              THE COURT:  Can you play that video, Mr. Zermay?

3              MR. ZERMAY:  Of course, Your Honor.

4         (Video played.)

5              THE COURT:  All right.  I don't know that I need to

6    watch more, but I'll watch the end of it if you'd like me to.

7              I told the court reporter that she didn't need to

8    transcribe it, but I'll need -- I'll direct the government to

9    get a copy of the video.  And we stopped watching at --

10             MR. ZERMAY:  11 minutes and 21 seconds, Your Honor.

11             THE COURT:  Thank you.  We stopped watching at

12   11 minutes and 21 seconds.  But it does need to be on the

13   record because I've considered it.  So Ms. --

14             MS. TAYLOR:  Taylor.

15             THE COURT:  -- Taylor, I'll direct you to file it as

16   the government's exhibit to the motion hearing with respect to

17   remand.

18             MS. TAYLOR:  Yes, Your Honor.  And --

19             THE COURT:  Oh, and --

20             MS. TAYLOR:  If I may, I'm not a hundred percent sure

21   if we have a copy of this video yet, but I will request it be

22   made as soon as possible.  But, of course, our ability to copy

23   it is going to depend on it not being deleted.

24             THE COURT:  Yeah, I will order that the video not be

25   deleted.

 1          (Government's Exhibit 1 admitted.)

 2               MR. ZERMAY:  Understand, Your Honor.

 3               And if I may be heard regarding the contents of the

 4     video --

 5               THE COURT:  Sure.

 6               MR. ZERMAY:  -- as it applies to the standards.

 7               THE COURT:  Mr. Zermay, do you want to come to the

 8     podium so you don't have to keep bending down?  I know that

 9     feels awkward.

10               MR. ZERMAY:  Of course.  Thank you very much, Your

11     Honor.

12               If I may be heard regarding the standards.

13               The video doesn't show that he is a danger to the

14     community.  It doesn't show that he's a flight risk.  It shows

15     that he's an individual that's frustrated about the litigation

16     process and that he's anticipating an appeal.  I heard verbiage

17     regarding him -- regarding the potentiality for the appeal.

18               And to ascribe the comments that the government has

19     put forward to show that it -- he does pose a risk to the

20     community, it isn't fair.  It's the statements of third parties

21     that are posting on a social media website like YouTube.

22               And Mr. Hoover has stated that he's more than willing

23     to refrain from posting about the trial going forward if the

24     Court were to permit him to be released presentencing.

25               And I believe I could represent that he'd be willing

1   to go completely silent on social media as well.

2            THE COURT:  All right.  Thank you, Mr. Zermay.

3            MS. TAYLOR:  Your Honor, may I note one more thing

4   for the record?

5            THE COURT:  Yes.

6            MS. TAYLOR:  Mr. Hoover's bond conditions that were

7   imposed back in January of 2022 I believe specifically prohibit

8   him from posting antisocial videos.  And in my view, this

9   video, amongst others, is clearly in violation of that bond

10  condition.  So it shouldn't be news to him that he shouldn't

11  have been posting this.

12           I would also note, Your Honor, that he also has other

13  individuals who are working on his behalf.  There's an

14  individual who has been in this courtroom throughout the trial

15  who we know to be feeding information to another YouTuber who

16  is making daily videos about the trial who has described

17  himself as a close friend of Mr. Hoover and who I believe

18  yesterday posted an entire video exclusively about how I am the

19  most evil --

20           THE COURT:  Okay.  I'm going to stop you there,

21  Ms. Taylor, only because my remanding Mr. Hoover isn't going to

22  do anything about what this other individual is doing.

23           MS. TAYLOR:  Yes, Your Honor.

24           THE COURT:  I mean, I just -- that is beyond my

25  jurisdiction at this point in time.

```
 1            Give me a moment.
 2        (Pause in proceedings.)
 3            THE COURT:  I'm trying to find the bond on the court
 4    docket.  Ms. Wiles, can you see if you can . . .
 5            COURTROOM DEPUTY:  It's 68-5.
 6        (Pause in proceedings.)
 7            THE COURT:  Oh, Ms. Taylor, do you have the
 8    screenshots that you were talking about?
 9            MS. TAYLOR:  Yes, Your Honor, if you could give me a
10    moment.  I have the two pages that I read.  There's more,
11    but -- and we also have a screen capture of the video in
12    which -- that I referenced before we took the break where
13    Mr. Hoover tells his followers to call the Public Defender's
14    Office, and the screenshot shows he has the name "Lisa" and
15    then the phone number for the Public Defender's Office in the
16    video.  And then we have the transcript of that video attached
17    to it as well if the Court would like to review that.
18            THE COURT:  All right.
19            Yes, Mr. Zermay.
20            MR. ZERMAY:  Yes, Your Honor.  If I may be heard
21    about the Public Defender remarks.  It's my understanding that
22    my client wasn't attempting to intimidate the Federal Public
23    Defender's Office in any way, shape, or form.  He was merely
24    trying to get other attorneys to contact her to facilitate the
25    motion to dismiss that was filed by Ms. Call.
```

1    Again, to ascribe any sort of malfeasance or

2 malevolence on my client's part by facilitating communications

3 of people that had Mr. Ervin's best interest in mind with his

4 advocate would also be unfounded and, respectfully,

5 inappropriate.

6        THE COURT:  All right.  Go ahead, Ms. Taylor.

7        MS. TAYLOR:  I would just read a portion of the

8 transcript of this video.  Mr. Hoover is talking about his

9 desire to help Mr. Ervin in the court case and he states, "And

10 I haven't got a phone call, an email or a letter yet, so I

11 don't know if he's restricted from those privileges, which

12 means the only person who can talk to him is his lawyer, which

13 is really bad, because if you don't find out about these

14 resources he's got, he may not win.  As soon as he gets ahold

15 of me, and as soon as we get those resources on him and I get a

16 fundraiser going, there's no reason whatsoever he should lose

17 this case.  Uh, so yeah, this is the lawyer's number.  Uh,

18 that's her name.  I'll post that right here.  Again, don't go

19 hard on her yet.  But the evidence I'm seeing leads me to

20 believe she's bull guarding him.  I don't know if like the

21 ATF's like, hey, don't let him talk to the outside world

22 because otherwise we're going to lose this case, or what the

23 deal is.  But again, if you -- if one of you guys have a family

24 member in there, get a message to him to get ahold of me.  He

25 really, really needs to get ahold of me so I can let him know,

```
1   go ahead and fire your Public Defender.  She is no longer
2   needed.  And I have a hell of a lot of resources for you to
3   use, but you've got to get ahold of me so I can funnel those
4   resources to you."
5           THE COURT:  All right.  Just put those together as
6   the government's Composite Exhibit 2 to the motion hearing, and
7   if you'll hand those up.
8           MS. TAYLOR:  Yes, Your Honor.
9       (Government's Composite Exhibit 2 admitted.)
10          COURTROOM DEPUTY:  What was the first one?
11          THE COURT:  I think the first one will be the video,
12  when we get it.
13          COURTROOM DEPUTY:  Okay.
14          THE COURT:  I'm sorry, Ms. Wiles, I need to look at
15  those.
16          COURTROOM DEPUTY:  I'm sorry.
17      (Pause in proceedings.)
18          THE COURT:  All right.  Anything else, Mr. Zermay?
19          MR. ZERMAY:  Yes, Your Honor.
20          Respectfully, Madam Government, Madam State, said
21  that Mr. Hoover's videos were antisocial in some respect.
22  Respectfully, the few videos that were provided, and even this
23  transcript, demonstrates the videos are not antisocial within
24  the means -- or within the meaning of what the pretrial service
25  release was.  He's merely expressing his frustration with the
```

1    case, which is understandable given the tumultuous situation

2    Mr. Hoover is currently in.  He is human, and to be human is

3    not necessarily to be antisocial.

4           The video with respect to Ms. Call was before he was

5    involved in this case, before he was indicted.  So to ascribe

6    that he would behave or engage in any antisocial conduct as a

7    result of this video or this transcript would be unfair.

8           The record has reflected that he's been a model

9    pretrial releasee.  That's reflected in his Pretrial Service

10   Status Report.  And his situation certainly has not -- in his

11   mind it hasn't changed, because we respectfully have looked at

12   this case -- and by "we" I mean Mr. Hoover -- have envisioned

13   this case going forward on appeal for a while.  And all the

14   issues that Ms. Taylor has identified are cured by merely an

15   order that he not post on social media.

16          And all the comments that the government has pointed

17   to are the comments of third parties with whom Mr. Hoover has

18   no control over, and to ascribe them to him would be wildly

19   unfair.

20          THE COURT:  So here's the concern I have about that,

21   Mr. Zermay.  The comments come and are a result of Mr. Hoover's

22   description of the proceedings.  And to be frank, a good bit of

23   what Mr. Hoover said in that video either reflects a

24   fundamental lack of understanding of what was happening in the

25   case, or it's misleading.

1      And what concerns me is that the offense conduct of

2   which the jury has convicted Mr. Hoover, boiled down to its

3   essence, is his ability to go on YouTube and convince people

4   that it's okay to do things that are illegal.  And that video

5   about the trial falls right in that type of conduct.

6      And I don't -- Mr. -- and when you say the comments

7   can't be ascribed to Mr. Hoover, the problem is that

8   Mr. Hoover's videos are what are causing those comments.  I

9   don't see Mr. Hoover responding to these people and

10  disagreeing.  And it is of significant concern.

11     And I don't see how posting a video about your auto

12  key card prosecution isn't posting a video focusing on the auto

13  key cards.  I guess you're focusing on your trial, not -- I

14  don't know, but I can't imagine that Mr. -- that it would have

15  seemed that this video didn't run afoul of the conditions of

16  pretrial release.

17     The statute says that a person who's been found

18  guilty of an offense -- well, that the judicial officer shall

19  order the person who has been found guilty of an offense be

20  detained, unless the judicial officer finds by clear and

21  convincing evidence that the person is not likely to flee or

22  pose a danger to the safety of any other person or the

23  community.  So the burden is on Mr. Hoover to show those

24  things.

25     The fact that he appeared for court before he had

1   been convicted and before he had been -- well, sorry, before he

2   had been convicted of five felony offenses is not necessarily

3   indicative of whether he will continue.

4           The fact that you were willing to go to a bench

5   trial, I'm not sure the point of that.  At the bench trial you

6   intended to argue the same things that you argued to the jury,

7   whether the auto key card was a combination of parts or not.

8           So I'm not -- I don't know that I'm convinced that

9   Mr. Hoover has shown by clear and convincing evidence that he

10  might not be a flight risk.

11          My bigger concern, though, is that Mr. --

12  Mr. Hoover's conduct, as I said, in encouraging and persuading

13  individuals to engage in conduct that is illegal conduct is a

14  danger to the safety of persons and of the community.  And I'm

15  not convinced that ordering him to stay off social media would

16  be effective, particularly after having watched this latest

17  video that was posted only a month before the trial.

18          It's Mr. Hoover's burden, and I just don't think he's

19  met his burden, and so he's -- I'm going to have to remand him

20  to the custody of the marshals to await sentencing.

21          MR. ZERMAY:  And Your Honor, if I may be briefly

22  heard with respect to one more thing.

23          THE COURT:  Sure.

24          MR. ZERMAY:  Would the Court allow Mr. Hoover to

25  surrender in Wisconsin as opposed to being remanded here in

1    Florida?  He does have a family he has to drive back up to
2    Wisconsin.  He would be willing to surrender in the Eastern
3    District of Wisconsin within a time period that the Court would
4    ascribe.  That would be our final request with respect to that.
5                 THE COURT:  I don't think I even have the ability to
6    do that.  I don't even think I can detain somebody in another
7    jurisdiction.  They have to be brought here to be in the
8    marshal's custody here.  So if he had been detained in
9    Wisconsin he would have had to be brought here to Florida to
10   await trial.
11                MR. ZERMAY:  It was my understanding that he was
12   originally taken into custody in Wisconsin.
13                THE COURT:  Right.
14                MR. ZERMAY:  And so that would be the jurisdictional
15   hook with respect to that.
16                THE COURT:  I don't think that works.
17                Marshal Fraley, may I see you a moment?
18                U.S. MARSHAL:  Sure.
19                THE COURT:  You always make the mistake of being in
20   my courtroom.
21          (The judge and the marshal confer.)
22                THE COURT:  Mr. Zermay, I'm just -- so when someone
23   is arrested on an outstanding warrant from Middle Florida,
24   they're requested and they're required to be brought here.  I
25   have never seen the Court -- I know of no authority that I have

1   to require a facility in Wisconsin to hold him in custody

2   there.  And it doesn't -- it won't address the issues that I've

3   raised.

4          I'm sorry, I think it's unfortunate.  I worry about

5   Mrs. Hoover having to drive back, but the statute says what it

6   says.  It says "clear and convincing evidence."  Mr. Hoover,

7   under the circumstances, simply does not have clear and

8   convincing evidence to satisfy the statute, and he's remanded

9   to the marshals at this time.

10         MR. ZERMAY:  And one more thing, Your Honor.

11  Mr. Hoover has requested I convey to him that -- or convey the

12  following request: that he drive his family back to Wisconsin,

13  then he could overcome his fear of flying and then fly back

14  down to the Middle District of Florida to surrender to the

15  custody of the marshal.

16         DEFENDANT HOOVER:  I'd do it all on my own dime.

17         THE COURT:  No, I understand, Mr. Hoover, but the

18  problem is once somebody has been remanded, the risk of flight

19  becomes exceedingly greater and --

20         DEFENDANT HOOVER:  Could I put a cash bond down?

21         THE COURT:  I understand that this is a very

22  difficult circumstance, and please know that I have not made

23  this decision lightly --

24         DEFENDANT HOOVER:  I understand.

25         THE COURT:  -- but I think it just has to be what it

1  is.

2          And Mr. Zermay, if you can make a better record that

3  you want me to reconsider it, we can do that, but --

4          MR. ZERMAY:  And just for purposes of the record, if

5  I could submit the pretrial sentence report, if I may approach.

6          THE COURT:  Oh, it's in the record.

7          MR. ZERMAY:  In the record already?

8          THE COURT:  Yeah.

9          MR. ZERMAY:  Okay.

10          THE COURT:  All right.  The marshals will have to

11  take Mr. Hoover.  And we're in recess.

12          COURT SECURITY OFFICER:  All rise.

13      (Proceedings concluded at 12:15 p.m.)

14                              -     -     -

15

16

17

18

19

20

21

22

23

24

25

1            CERTIFICATE OF OFFICIAL COURT REPORTER

2

3  UNITED STATES DISTRICT COURT)

4  MIDDLE DISTRICT OF FLORIDA )

5

6       I hereby certify that the foregoing transcript is a true

7  and correct computer-aided transcription of my stenotype notes

8  taken at the time and place indicated herein.

9

10       DATED this 27th day of May 2023.

11

12                         /s/ Katharine M. Healey
                           Katharine M. Healey, RMR, CRR, FPR-C
13                         Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25